## WIDOW AND HEIRS OF GEORGE KING v. P. G. WARTELLE.

The action of one partner, or his representative, against the other partner, for an account, is prescribed in ten years after the dissolution of the partnership. The amendment of a petition for an account by praying for a partition of property held in common between the partners, is allowable.

The meaning of Article 2861 of the Civil Code is, that the rules of partition among heirs, apply to partitions among partners; not that the rules governing the action of partition among heirs, apply to all actions which may be exercised by one partner against another.

When the action is one for partition of property, and the liquidation of partnership affairs, the settlement of the accounts being an incident to the partition, the prescription of thirty years only is applicable to the case.

An opposition to the report of auditors, must specially mention the items of credit objected to.

APPEAL from the District Court of the Parish of St. Landry, *Martel*, J. *T. H. Lewis & Porter*, for plaintiffs and appellants. *J. G. Olivier & C. H. Mouton*, for defendant.

BUCHANAN, J. The late *George King* and the defendant, on the 13th of May, 1829, entered into a partnership, " in the business of cultivating cane and making sugar."

The contract of partnership was in the form of an authentic act, and stipulated:

1st. That certain lands particularly described, belonging to the parties either jointly or individually, should be " employed in cultivation for the use of the said copartnership, so long as it shall continue to exist."

2d. That the parties should " each furnish an equal force of slaves for the purpose of cultivating and carrying on said business, the said slaves to be at the risk of their respective owners."

3d. That expenses for buildings, &c., should be equally borne, and the buildings, &c., so bought and constructed, should be common property.

4th. Advances in cash, made by either partner, to be reimbursed out of the proceeds of the next crop; or if not then reimbursed, for want of means, to have an interest of ten per cent.

5th. "At the end of every year, or when the crop shall have been disposed of, and the expenses paid, the net proceeds shall be divided, equally, between the said partners."

The last crop made for the account of the partnership upon the land described in the first Article of this contract of partnership, was so made in the year 1839.

In the month of February, 1840, *George King*, having purchased a tract of land in the Bellevue prairie, of one *Gray*, removed all the slaves belonging to him, from the plantation cultivated in partnership by himself and defendant, to the tract of land thus purchased, and put an end to the partnership.

*George King* died in November, 1850 ; and in Oct., 1851, his heirs bring this suit against the defendant, for " a full and complete account of his administration of the affairs of the said partnership," and pray " that he be condemned to pay to plaintiffs such sum as he may be found to owe, on a fair settlement of the partnership accounts."

The defendant pleads the prescription of ten years to this action ; and the plea, in our opinion, is well taken. The partnership was dissolved more than ten years previous to the institution of this suit; and the action of one of the partners, or his representatives, against the other partner, for an account, and for the balance resulting from such an account, is a personal action, which is prescribed in ten years.

All the parties are residents of the parish of St. Landry. C. C. 3508.

After the plea of prescription was filed in the cause, the plaintiffs filed an amended petition, with leave of court, praying for a partition of the undivided tracts of land, and other undivided property held in common by the parties, under their contract of partnership.

The defendant excepted to this amendment as altering the nature of the demand. The District Court overruled the exception ; and the defendant, under reservation of his exception, answered the amended petition, assenting to the partition of two tracts of land, which he averred to be the only property of the parties still remaining undivided.

While we concur with our brother of the District Court in allowing the amendment offered by the plaintiffs, for the reason, that there is nothing in it inconsistent with the original petition, we cannot give it the effect which the learned counsel of plaintiffs claim for it, of absorbing, as it were, the original action, and giving to *that*, a vitality beyond the limit assigned to it, by the Article of the Code above quoted.

The Article 2861, upon which the plaintiffs rely, does not say, that the action for the settlement of partnership accounts, is governed by the same rules, as the action of partition of inheritances among heirs.

That Article, which is the last in the title of " partnership" in the Code, reads as follows :

" The rules concerning the partition of inheritances, the manner of making such partition, and the obligations which result from the same between heirs, apply to partners."

The meaning of the legislator is, obviously, that the rules of partitions among heirs, apply to partitions among partners ; not that the rules governing the action of partition among heirs, apply to all actions which may be exercised by one partner against another.

The judgment of the District Court rejects the action of plaintiffs for a settlement of partnership accounts ; and sustains that for a partition of the property remaining undivided between the partners.

For the reasons above given, the judgment appealed from is affirmed. And it is further decreed, that plaintiffs and appellants pay the costs of appeal.

### SAME CASE—ON A RE-HEARING.

MERRICK, C. J. On a reconsideration of this case, we are still of the opinion that the amendment of plaintiffs' petition was properly allowed. Indeed, the defendant's counsel admits that there was no inconsistency between the two demands. In the settlement of partnership accounts, it may frequently happen that each partner is indebted to the partnership for the sums withdrawn; each may have in his possession funds received, and there may be assets on hand.

In such case, if one partner call upon the other for an account, it is evident that judgment ought not to be rendered in favor of such plaintiff, for one-half of what such defendant may owe the *partnership*, but only for such balance as may be due on the partition after the plaintiff has, himself, accounted for what he has received and what he owes. Thus we said, in the case of *Pratt* v. *McHatton*, 11 An. 265, that a several judgment against one in favor of other individual partners, should not be rendered, where there are available partnership assets, by which the amounts received by the partners can be readily equalized. The amendment, then, was properly allowed, as it tended to a complete liquidation of the partnership. When the amendment was once allowed, it formed a part of the pleadings, and plaintiffs' demand was precisely what it would have been, had plaintiffs' original and amended petition been filed at the same time. See 3 Mart. 40, 41.

The action is then one for partition and the liquidation of partnership affairs. The prescription of this action is thirty years. C. C. 2861, 1227, 1228, 1229.

The settlement of the account of the partners is but an incident to the partition, precisely as the recovery of the rents and revenues is an incident to the action of revendication of real estate. The defendant may be an usurper and a possessor in bad faith, yet the prescription of one year will not bar the action for the rents and revenues, as an incident, to the petitory action. 3 Toul. 72; 6 Saugrey, 248–251, Berlin ed.

So, here, the settlement of the accounts is an incident to the partition, and without the same, there can be no equality in the partition. C. C. 1279, 1280, 1281. Mackeldy says:

" Losqu'une succession, ou un objet particulier, fait l'objet de la communauté, chaque co-héritier ou co-propriétaire a le droit d'intenter contre l'autre une action en partage ; le co-héritier ou le co-propriétaire qui jusque-là a administré la succession ou la chose commune est tenu de rendre compte de sa gestion et de partager proportionellement avec les autres tout ce qu'il a acquis." Brussels ed. 1846, p. 239, sec. 503, No. 2, Partie Spéciale; see also Dig., lib. 10, t. 2, lex. 19 ; Dig. 10, t. 3, lex. 20.

The point was also decided by this court in the case of *Aiken* v. *Ogilvie*, 12 An. 354, wherein it was held, that the plea of prescription of ten years did not apply.

This brings us to the consideration of the case on the merits, and it is presented as follows :

" On the 5th of June, 1852, upon motion of the plaintiffs, and without objection from defendant, the settlement of the accounts between the parties, was referred to

auditors, who qualified according to law, and on the 25th of October of the same year, notified the plaintiffs and defendant that they would, on the 29th inst., following, enter upon their investigation.

" On the 14th of August of the next year, (1853,) the auditors made their report, establishing from the exhibits before them, a balance in favor of the plaintiffs, up to the 1st of August, 1841, of $4,996 60.

" This report did not include the value of the movables and immovables held jointly and left in indivision, or the account since pleaded by the plaintiffs.

" On the 13th of December, 1854, the plaintiffs filed their motion to amend the report of the auditors, praying to be allowed as credits the amount of an account for advances made the partnership in 1828, of $2,095 50, with interest thereon, as stipulated in the articles of co-partnership, and that all the sums claimed by the plaintiffs in this suit, and not credited by the auditors, be allowed. With these amendments, they pray the homologation of the report, and that the defendant be cited to show cause why it should not be homologated accordingly.

" On the 16th of May, 1856, the defendant answered the rule by denying all the allegations alleged in the motion for the amendment of the report; and for cause why it should not be homologated, plead :

" First. That the auditors have adopted the first day of April of each year as the period from which to compute the interest, when, by the terms of the contract, the settlement was to be made at the end of each year, or after the sale of the crop ; and that the interpretation thus given to the act by the auditors is in direct violation of the construction put upon it by the parties themselves.

" Secondly. That said auditors have allowed interest to the defendant on the balance due him annually from the first day of April of each year ; when under the articles of co-partnership, as understood by the parties themselves, interest was due him from the date of the advances.

" Thirdly. The auditors have allowed interest to the plaintiffs on the partnership funds, or proceeds of the sale of the crops, from the first of April of each year, when by the terms of the contract no interest was due or would be allowed on these funds ; but interest was due, and only could be allowed by one partner to the other out of his individual funds, and that in point of fact no funds remained in the coffers of the partnership at the end of any one year.

" Fourthly. That there is error in striking out of the account of the defendant the price of slave *Charles*, purchased at the succession sale of *Washington Butler*, which, with another slave, *Simon*, purchased on the 18th of May, 1835, were bought on account of the partnership, though the titles to them were taken in the individual name of defendant. That immediately after the dissolution of the partnership, a division of the property susceptible of a partition in kind having been effected, the late *Judge King* took the boy *Simon*, and defendant the slave *Charles*. That *King* subsequently sold *Simon* to *Wikoff*, and concluded with a prayer for the rejection of the plaintiffs' demand ; that the report of the auditors be set aside ; that the errors here complained of be corrected by the court, or that the report be resubmitted to the auditors for correction ; and again reiterates his plea of prescription."

It is thus seen that the whole controversy is confined to the objections of the parties to the auditors' report.

I. Plaintiffs claim that the report of the auditors should be amended, by allowing the plaintiffs credit for $2,095 50, and ten per cent. interest thereon from 1829 until the present time. There is much uncertainty in the testimony on this

branch of the case, and we are not disposed to disturb the auditors' report in this particular.

II. The second objection of plaintiffs' counsel to the auditors' account, is too general. If any items of credit have not been allowed, they should be specially mentioned in the motion to amend, or in the opposition to the report ; otherwise, the report of auditors would be of little or no assistance to the court in the investigation of a case.

III. The defendant objects, that the auditors have assumed the first of April, instead of the first of January, as the period at which the accounts were to be settled and the interest calculated. The difference in the result would be so inconsiderable as to make the change a matter of but little importance. Probably it would not benefit the defendant at all, and would require a new reference to auditors to make the calculations. The first of January is not absolutely fixed by the contract as the period for such calculations, but it is in the alternative, and the period when the crops are sold and the expenses paid is also mentioned in the contract. The auditors assumed the first day of April as that period, and we cannot say that the contract did not authorize them so to do.

IV. The defendant complains that he has been allowed advances only from the first day of April of each year, instead of the date at which they were made. It appears by the fourth clause of the contract, that it was when the advances exceeded the crop, that they were to bear interest, otherwise, the partner advancing, received, annually, his disbursement, at the same time that he withdrew his share of the net proceeds of the crop. Thus, it seems, that the partner advancing, was to wait until this period, before he could require the interest to be stated.

V. It is objected, that the plaintiff ought not to have been allowed interest from the first of April of each year, on his portion of the proceeds of the crop such year ; and that in point fact, no funds remained in the coffers of the partnership at the end of any one year. The defendant has claimed interest at the rate of ten per cent. per annum, for his advances and for sums individually furnished the deceased, *George King*. While availing himself of the stipulations of the act of partnership, he has no reason to complain of the application of the same rule to himself.

This construction of the contract appears reasonable and should bind him. He controlled the funds of the partnership and received the same. Whilst he is entering up charges against his co-partner, for principal and ten per cent. interest, he must allow, as a credit under the contract, the funds which his partner is entitled to withdraw, and which he chooses to manage for the benefit of the partnership affairs. They may well be considered advances when so detained.

VI. The auditors do not appear to have erred in refusing the defendant credit for the price of the slave *Charles*. *Judge King*, himself, appears to have paid a part of the price. The proof is too uncertain, and we will allow it to stand as an offset to plaintiffs' claims for horses, mules, &c., furnished in 1828 or 1829.

We do not think *Judge King's* letter to defendant, requesting a loan of $550, a waiver of his demands against the defendant as a partner. Among many persons, the loan of cash for a short period, is looked upon as a kind of debt of honor and to be returned without reference to the state of accounts between the parties. Perhaps a creditor would apply more willingly to his debtor, for such favor, than to another person.

By the act of partnership, the heirs are entitled to recover ten per cent. interest from April 1st, 1841, until paid.

The appellant did not complain of the mode adopted to settle the accounts between the partners, as it seemed to favor his argument on the plea of prescription. But it leaves the one partner personally indebted to the other, on the statement of the accounts, whilst the residue of the partnership property must be equally divided between the partners, and we shall so decree.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment heretofore pronounced by us, be set aside, and that the judgment of the lower court be avoided and reversed; and that the plaintiffs, as administrator and heirs of *George King,* deceased, do recover and have judgment against the defendant, *Pierre G. Wartelle,* for the sum of four thousand nine hundred and ninety-six dollars and sixty cents, with ten per cent. interest thereon, from April 1st, 1841, until paid, and the costs of both courts to this date. And it is further ordered, that the case be remanded for an inventory and partition between the plaintiffs and defendant, of the property remaining in kind; the decree being without prejudice to the rights of *Mrs. Louisa King,* wife of said *Wartelle,* to claim her interest in said debt and real estate in the hands of said administrator, when he shall have received and administered the same.